UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Andre Martin,

      Plaintiff,

      v.                                         Civil Action No. 1:13-CV-70

Andrew Pallito,

      Defendant.


## **REPORT AND RECOMMENDATION**
(Doc. 10)

Plaintiff Andre Martin brings this action pro se, pursuant to 42 U.S.C. § 1983, against Defendant Andrew Pallito, Commissioner of the Vermont Department of Corrections (DOC).  (Doc. 5.)  Mr. Martin seeks his immediate release and $150 million in compensation for a physical assault and emotional trauma that he allegedly sustained in 2009 while he was an inmate in an out-of-state facility.  (*Id*. at 4–5.)  Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), asserting, among other things, lack of personal involvement and failure to state a claim for a violation of any constitutional rights.  (*See* Doc. 10 at 3–12.)  For the reasons stated below, I recommend that the Motion to Dismiss be GRANTED, and that Mr. Martin be granted leave to amend.

## Factual and Procedural Background

In his Complaint, Mr. Martin alleges that, from January 2009 to December 2009, while in DOC custody for simple assault, he was housed in correctional facilities in Alabama and Tennessee, even though it is against DOC policy for inmates with misdemeanors to be housed out of state.  (Doc. 5 at 4.)  He alleges that as a result of being transferred out of Vermont and placed with federal inmates, he lost his family, witnessed physical violence, and was himself physically assaulted.  (*Id*.)  He further alleges that those experiences have traumatized him, and that, after he was assaulted, he was "put in seg[regation] so I could keep my mouth shut."  (*Id*.)  According to Mr. Martin, he "spoke to Jason Kennedy and Kevin Oddy about this and why was I held out [there] with misdemeanor with federal inmates [but] they would not give me [an] answer."  (*Id*.)  Mr. Martin seeks $150 million in damages.  (*Id*. at 5.)  He also seeks to be released from prison because he feels that he "got too much time for simple assault misdemeanors."  (*Id*.)

Mr. Martin asserts that he presented his complaint pursuant to a prisoner grievance procedure, but received no response.  (*Id*. at 2.)  He previously filed a § 1983 suit in this Court seeking relief for the same alleged wrongdoing, but he voluntarily dismissed that case.  (*Id*. at 3.)  Mr. Martin filed the present suit in May 2013.

Defendant moved to dismiss the Complaint on July 3, 2013 (Doc. 10).  After receiving an extension of time (Doc. 12), Mr. Martin filed a timely opposition on August 27, 2013.  (Doc. 13.)  Although Mr. Martin has not filed a formal motion to amend his Complaint, he states in his opposition that he "would like to seek the Court's

permission to amend the complaint." (Doc. 13 at 11–12.)  At present, Plaintiff's original Complaint remains operative, and Defendant's Motion to Dismiss is ripe for adjudication.

## <u>Discussion</u>

Federal law provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right."  *Id*.

Defendant moves to dismiss Mr. Martin's § 1983 suit on the following grounds: (1) sovereign immunity; (2) lack of any personal involvement by Commissioner Pallito; (3) failure to state a claim for a violation of any constitutional rights; (4) lack of any physical injury caused by any of the alleged wrongful acts; and (5) statute of limitations. (Doc. 10 at 3–12.)

## I.      Legal Standard for a Rule 12(b)(6) Motion to Dismiss

In evaluating Defendant's Rule 12(b)(6) motion, the Court is required to take "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  To survive dismissal, Plaintiff is not required to plead "detailed factual allegations," but the Complaint must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Plausibility turns on whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Here, since Plaintiff is proceeding pro se, the Court "is obliged to construe his pleadings liberally." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).  This is especially so because Plaintiff is alleging civil-rights violations.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin*, 357 F.3d at 200).

## II.     Release from Confinement is Unavailable Under § 1983

Mr. Martin seeks to be released from prison because he feels that he "got too much time for simple assault misdemeanors." (Doc. 5 at 5.)  That is a challenge to the fact or duration of his imprisonment, and thus his sole federal remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see Peralta v. Vasquez*, 467 F.3d 98, 102 (2d Cir. 2006) (noting that in *Preiser* the Supreme Court "established that habeas is the exclusive remedy for a state prisoner seeking an earlier release").  The Court should

therefore DISMISS Mr. Martin's Complaint to the extent that it seeks release from confinement.  However, since Mr. Martin's claims for money damages do not constitute an attack on the fact or length of his confinement, it is necessary to analyze those damages claims.  *Cf. Heck v. Humphrey*, 512 U.S. 477, 478–90 (1994) (prisoner's § 1983 claim for money damages for an allegedly unconstitutional conviction was not cognizable because, although he did not seek an earlier release as a remedy, his damages claims challenged the legality of the conviction).  That analysis begins with Defendant's claim of sovereign immunity.

## III.   Eleventh Amendment Immunity

Defendant contends that, to the extent that Mr. Martin seeks damages from Commissioner Pallito in his official capacity, his suit is barred by Eleventh Amendment sovereign immunity.  (Doc. 10 at 4.)  Mr. Martin asserts that the State of Vermont has waived its immunity pursuant to 12 V.S.A. § 5601(f) by purchasing a policy of liability insurance.  (Doc. 13 at 2–8.)  The Court should reject Mr. Martin's § 5601(f) argument in light of the explicit provision of 12 V.S.A. § 5601(g), which states that "[n]othing in this chapter waives the rights of the state under the Eleventh Amendment of the United States Constitution."  *See Brady v. Pallito*, No. 5:12-CV-41, 2013 WL 2632780, at *6 (D. Vt. June 11, 2013) (noting that, pursuant to § 5601(g), the State of Vermont has expressly retained its Eleventh Amendment immunity).

The only other circumstance under which a state official acting in his official capacity is not entitled to Eleventh Amendment immunity is when Congress overrides that immunity by exercising its powers under the Fourteenth Amendment.  *Brady*, 2013

WL 2632780, at *5 (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000)).

However, "Congress has not abrogated Vermont's immunity through enacting

legislation."  *Id.* at *6 (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).  Thus

Defendant Pallito enjoys the benefit of Vermont's sovereign immunity from damages

actions brought against him in his official capacity.  *See Davis v. New York*, 316 F.3d 93,

101 (2d Cir. 2002) (affirming dismissal of claims against prison officials in their official

capacities because those claims were barred by the Eleventh Amendment).  Accordingly,

the damages claims against Defendant in his official capacity should be DISMISSED.

## IV.    Statute of Limitations and Personal Involvement

The Court should reject Defendant's contention (Doc. 10 at 12) that Mr. Martin's

Complaint is barred by the statute of limitations.  *See Bain v. Cotton*, No. 2:06 CV 217,

2009 WL 1660051, at *4–*5 (D. Vt. June 12, 2009) (concluding that 12 V.S.A. § 551(a)

applies to § 1983 actions, and effectively tolls the limitations period during a § 1983

plaintiff's incarceration).  However, Defendant also maintains that Mr. Martin's

individual-capacity claims fail because Defendant was not personally involved in any of

the alleged conduct.  (Doc. 10 at 4.)  Mr. Martin asserts that Commissioner Pallito

necessarily "has involvement" pursuant to 28 V.S.A. §§ 102(B)(5), 701 and 702  "when

any offender is transferred from the in-state facility to the out-of-state facility."  (Doc. 13

at 8.)

Personal involvement of a defendant in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.  *Spavone v. N.Y. State Dep't of Corr.*

*Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873

6

(2d Cir. 1995)).  In order to prevail on a § 1983 claim against an individual, a plaintiff

must show some "tangible connection" between the constitutional violation alleged and

that particular defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Court should reject Mr. Martin's contention that Commissioner Pallito's

position as Commissioner of Corrections necessarily makes him "personally involved"

with all transfer decisions.  It is true that the Commissioner has the power "[t]o order the

assignment and transfer of persons committed to the custody of the commissioner to

correctional facilities, including out-of-state facilities."  28 V.S.A. § 102(b)(5).  It is also

true that the Commissioner "shall have the authority to designate the place of

confinement where the sentence shall be served."  *Id*. § 701(b).  However, the

Commissioner is also authorized to delegate "any authority conferred on him by statute to

any designee named by him in writing."  *Id*. § 102(b)(4).  Thus the Commissioner is not

"personally involved" in all transfer decisions simply by virtue of his office.

Similarly, the mere fact that the DOC is under the direction of the Commissioner

does not establish Defendant's liability.  *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d

Cir. 1985) (per curiam) (claim for monetary damages against state commissioner of

corrections and prison superintendent required a showing of "more than the linkage in the

prison chain of command; the doctrine of respondeat superior does not apply").  Rather,

to show the personal involvement of a supervisory defendant, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong, (3) the defendant created a
> policy or custom under which unconstitutional practices occurred, or
> allowed the continuance of such a policy or custom, (4) the defendant was

grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).[1]

Here, although Mr. Martin alleges that he was transferred out of Vermont against DOC policy, he does not assert anywhere in his Complaint that Commissioner Pallito directly participated in the decision to transfer him. *See Seifert v. Corr. Corp. of Am.*, No. 2:09 CV 119, 2010 WL 446969, at *4 (D. Vt. Feb. 1, 2010) (prisoner who alleged that he was assaulted after having been transferred out of Vermont in alleged violation of Kentucky law and a DOC contract failed to allege any specific wrongful acts by the named defendants). To the extent that Mr. Martin alleges that he was put in segregation in retaliation for exercising any of his constitutional rights, he likewise does not allege any direct involvement by Commissioner Pallito. Plaintiff's assertions that "Andrew Pallito is responsible for every inmate" and for "whatever happens while in his custody," and that Mr. Martin "was treated unfair[ly] while in Mr. Andrew Pallito[']s care" (Doc. 5 at 3), are insufficient to allege Commissioner Pallito's direct participation in the transfer decision.

---

[1] There has been considerable debate in this circuit as to the fate of the latter four *Colon* factors in the wake of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Thompson v. Pallito*, No. 1:23-cv-225-jgm-jmc, 2013 WL 2393109, at *10 (D. Vt. May 29, 2013). Here, in contrast to *Iqbal*, Mr. Martin has not asserted intent-based claims. *See Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."). In light of that fact, and because the Second Circuit has not explicitly overruled *Colon*, I apply each of the categories of personal involvement as established by the Second Circuit in *Colon*.

Indeed, although he asserts that he complained to Jason Kennedy and Kevin Oddy, Plaintiff does not allege that Commissioner Pallito was even aware of Mr. Martin's claims.  Nor does he allege that the DOC had a policy or custom that sanctioned unconstitutional conduct, or allowed such a policy or custom to continue.  Mr. Martin also does not allege that Commissioner Pallito was grossly negligent in supervising any subordinates who might have ordered Mr. Martin's transfer, or who might have retaliated against him by putting him in segregation.  Thus all of Mr. Martin's claims against Commissioner Pallito should be DISMISSED for lack of personal involvement.

## V.      Failure to Protect

In addition to the lack of any allegation of Defendant's personal involvement with the alleged constitutional violations, Defendant also maintains that Mr. Martin has failed to allege a viable failure-to-protect claim.  (Doc. 10 at 7.)  The Complaint does allege that Mr. Martin was placed in a facility with felons, and was thus exposed to a heightened risk of attack.  However, as this Court has previously concluded, "[t]his sort of generalized claim does not satisfy the Eight[h] Amendment 'deliberate indifference' standard." *Seifert*, 2010 WL 446969, at *5.  Here, as in *Seifert*, the Complaint does not allege that Defendant was aware of any particular risk of danger that, if ignored, might expose him to liability under § 1983.  *Id*.  Thus, to the extent that Mr. Martin is alleging a failure-to-protect claim, that claim should be DISMISSED for this additional reason.

## VI.     Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss pro se complaints with prejudice without granting leave to amend at least once "when a liberal

reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  Nonetheless, leave to amend may be denied in certain circumstances, including futility or "repeated failure to cure deficiencies by amendments previously allowed." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).  In light of these standards and Mr. Martin's explicit statement that he intends to amend his Complaint, the Court should grant such leave because, by naming different defendants or, with the addition of enhanced factual allegations, Plaintiff may be able to state a plausible claim.

Any amended filing shall be entitled "Amended Complaint" and must contain all claims against all parties as it will supersede the original Complaint in all respects. Accordingly, the Court should require that an Amended Complaint, if any, be filed within 30 days of its ruling on this Report and Recommendation.  Failure to so amend should result in the dismissal of all claims with prejudice.

## Conclusion

For the foregoing reasons, I recommend that Defendant's Motion to Dismiss (Doc. 10) be GRANTED.  I further recommend that, if this Report and Recommendation is adopted by the Court, Mr. Martin be allowed 30 days to file an Amended Complaint. Failure to file an Amended Complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 25th day of October, 2013.

                                        /s/ John M. Conroy
                                        John M. Conroy
                                        United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).